UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

FOX INSURANCE COMPANY and
REENA NANDI,

               Plaintiff,

     -against-                          **OPINION & ORDER**
                                             **CV-09-0237 (SJF)(ARL)**

ENVISION PHARMACEUTICAL HOLDINGS,
INC., ENVISION PHARMACEUTICAL
SERVICES, INC., JAMES MINDALA, KEVIN
NAGLE and BARRY KATZ,

               Defendants.

     -against-

DIPAK NANDI, JAYDIP DATTARAY, RAJESH
GUPTA and KARY SHANKAR,

               Counterclaim Defendants.
----------------------------------------X

FEUERSTEIN, J.

       On December 30, 2008, plaintiffs Fox Insurance Company and Reena Nandi (collectively, "plaintiffs") filed a complaint against defendants Envision Pharmaceutical Holdings, Inc. ("EPHI"), Envision Pharmaceutical Services, Inc. ("EPSI"), James Mindala, Kevin Nagle and Barry Katz (collectively, "defendants") in the Supreme Court of the State of New York, County of Nassau alleging claims, *inter alia*, for fraudulent inducement relating to a Pharmacy Services Agreement and a separate Letter of Intent and related letter agreements (collectively, the "Letter of Intent") entered into by the parties, as well as breach of contract of the Letter of Intent. On January 21, 2009, defendants filed a Notice of Removal to remove the

1

state court action to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Defendants James Mindala ("Mindala"), Kevin Nagle ("Nagle") and Barry Katz ("Katz") (collectively, "the individual defendants") filed their answer to the complaint on January 22, 2009. Defendants EPHI and EPSI (collectively, "Envision") filed their answer to the complaint on January 26, 2009 and asserted counterclaims against plaintiffs, as well as against Jaydip Dattaray, Rajesh Gupta, Dipak Nandi and Kary Shankar (collectively, "the counterclaim defendants"), alleging claims, *inter alia* for fraudulent inducement, breach of contract, unjust enrichment, defamation and tortious interference with contract and business relations. Envision now moves for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure compelling plaintiff Fox Insurance Company ("Fox") (1) to pay to Envision the full amount owed to the network pharmacies for prescription drugs dispensed to Fox's insureds in the month of December 2008; or, in the alternative (2) to pay the network pharmacies directly and certify to the Court in writing that payment is complete.[1] For the reasons set forth herein, Envision's motion is denied.

I.  Background

   A.  Factual Background[2]

Fox is an Arizona corporation. (Complaint [Compl.], ¶ 1). Since September 2005, Fox

---

[1] Envision represents that once payment is made by Fox to the network pharmacies, Envision will update all of its data files and make that data available to Fox, which is the relief Fox sought on a separate motion for a preliminary injunction that was denied without prejudice by order dated March 17, 2009.

[2] The factual allegations are taken from the pleadings and from the affidavits and exhibits submitted in support of, and in opposition to, Envision's application for a preliminary injunction.

has been a Prescription Drug Plan sponsor ("PDP Sponsor") for the Centers for Medicare and Medicaid Services ("CMS"), which is an agency of the United States Department of Health and Human Services ("HHS"), pursuant to a written CMS Agreement. (Compl., ¶¶ 9-10). Since it entered into the CMS Agreement, Fox has sponsored a Medicare Part D Prescription Drug Plan ("PDP") providing prescription drug coverage for participating Medicare beneficiaries. (Compl., ¶ 12).

EPHI is a Delaware corporation with its principal place of business in Twinsburg, Ohio. (Compl., ¶ 3; Envision's Answer (Ans.), ¶ 3; Counterclaim [Countercl.], ¶ 1). EPSI is an Ohio corporation with its principal place of business in Twinsburg, Ohio. (Compl., ¶ 4; Ans., ¶ 4; Countercl., ¶ 2). EPSI is a pharmacy benefits management company and is a wholly-owned subsidiary of EPHI. (Compl., ¶¶ 5, 14; Ans., ¶¶ 5, 14; Countercl., ¶¶ 2, 9).

Envision alleges that in or about March 2007, representatives of Fox approached EPSI to solicit it to provide PBM services to PDPs sponsored by Fox. (Countercl., ¶ 14). According to Envision, during early discussions between EPSI and Fox, counterclaim defendant Kary Shankar ("Shankar"), the Chief Executive Officer of Fox, (Countercl., ¶ 8), provided EPSI with information relating to Fox's current and projected finances. (Countercl., ¶¶ 15, 60). Envision alleges that Fox "grossly overstated its financial condition in the information provided" by Shankar in order to induce EPSI to do business with Fox. (Countercl., ¶ 15). According to Envision, in reliance on Fox's representations, it began making "extensive" preparations to assume responsibility for providing PBM services to Fox-sponsored PDPs commencing January 1, 2008. (Countercl., ¶ 16).

During the negotiation of the Pharmacy Services Agreement, representatives of EPSI,

including the individual defendants, represented to Fox, *inter alia*, that EPSI would "pass through," i.e. credit to Fox, one hundred percent (100%) of all price discounts and concessions, i.e. rebates, rebate administrative fees, pharmacy discounts and other incentives, it received from pharmacy companies with which it contracted ("pass-through pricing"). (Compl., ¶¶ 18-20; Ans., ¶¶ 18-20). Plaintiffs allege that the individual defendants' representations regarding "pass-through pricing" were false when made, insofar as at the time they were made, EPSI intended, as part of its "rebate aggregator" and "top up rebate" retention policies, to retain approximately twenty to thirty percent (20-30%) of all price discounts and concessions it received from pharmacy companies, and were made with the intent to induce Fox to enter into the Pharmacy Services Agreement. (Compl., ¶¶ 21-25). Fox alleges that it would not have entered into the Pharmacy Services Agreement had it known EPSI's representations were false. (Compl., ¶¶ 26-28).

On or about December 5, 2007, Fox and EPSI entered into a written Pharmacy Services Agreement, effective January 1, 2008 for an initial term of twenty-four (24) months. (Compl., ¶ 15; Ans. ¶ 15; Countercl., ¶¶ 20-21, 65). Pursuant to the Pharmacy Services Agreement, EPSI was required to perform certain PBM services and Fox was required, *inter alia*, to remit to Envision timely payment of claims of network pharmacies for covered prescriptions dispensed to Fox's eligible members, as well as certain fees set forth in the Pharmacy Services Agreement. (Pharmacy Services Agreement ["PSA"] § 5.4). Section 7.2 of the Pharmacy Services Agreement provides, in relevant part, as follows:

> "For Covered Prescriptions dispensed to Eligible Members in accordance with the terms of this Agreement, [Fox] agrees to reimburse [EPSI] as follows:

4

> 7.2.1 Payments for claims shall be made prospectively based on an estimated amount determined from the average of previous four weeks of claims experience. Specifically, beginning the second month of this Agreement, [Fox] shall pay [EPSI], on Monday of each week, an amount equal to the average claims amount for the prior four weeks. [EPSI] shall furnish [Fox] with an invoice for the upcoming payment on Friday of each week. The invoice shall be adjusted to account for any overpayments or underpayments made during the previous weeks. * * *."

Section 7.3 of the Pharmacy Services Agreement provides, in relevant part:

> "Nothing herein will obligate [EPSI] to pay Participating Pharmacies if [Fox] fails to pay [EPSI] as required under this Agreement. Notwithstanding anything herein to the contrary, [Fox] will be and will remain responsible for the payment for all Covered Prescriptions dispensed to Eligible Members along with any associated dispensing fees in accordance with the terms of this Agreement."

In addition to its duty to pay claims of network pharmacies, Fox also agreed to pay [EPSI] a Management Fee by the fifth day of each month for that particular month's services, (PSA, § 7.5), and other "miscellaneous expenses," including postage, within ten (10) calendar days of Fox's receipt of an invoice therefor, (PSA, § 7.6). The Pharmacy Services Agreement further provides that in the event, *inter alia*, Fox failed to make timely payments in accordance with its duties under the Pharmacy Services Agreement, Fox would pay EPSI, "in addition to such unpaid amounts, interest at a rate of two percent (2%) per month on the outstanding balance, beginning on the date the payment is overdue and continuing until payment is received by [EPSI]." (PSA, § 7.7).

Envision alleges that in or before October 2008, Fox secretly began to replace EPSI as the provider of PBM services for Fox-sponsored PDPs for the approaching year, in willful breach of the Pharmacy Services Agreement. (Countercl., ¶¶ 33-36). According to Envision, Fox

subsequently entered into a contract with ProCare Rx ("ProCare"), a competitor of EPSI, for ProCare to provide PBM services to Fox-sponsored PDPs starting on January 1, 2009. (Countercl., ¶ 34). Envision alleges that during the months of November and December 2008, when it was unaware that plaintiffs were trying to secure a new PBM service provider, EPSI agreed to field overflow and after-hours telephone calls on behalf of Fox from, *inter alia*, participants of Fox-sponsored PDPs for a fee of only seventy-five cents ($0.75) per minute because of the parties' "two year exclusive contractual relationship." (Countercl., ¶¶ 75-80).

Envision alleges that following its deal to replace EPSI, Fox began to delay its payments to Envision for prescription drug claims, then ultimately failed to make any payments to Envision for such claims. (Countercl., ¶¶ 38-39). In addition, Envision alleges that in December 2008, counterclaim defendant Rajesh Gupta ("Gupta"), the Chief Financial Officer of Fox, (Countercl., ¶ 7), made several false representations to, among others, Marty Mount ("Mount") at Envision that payment would be made by certain dates. (Countercl., ¶¶ 40-52, 70). According to Envision, on December 22, 2008, Mount advised Gupta that if the approximately one and a half million dollars ($1,500,000.00) owed by Fox was not wired to EPSI by the end of that day, EPSI would advise its network of pharmacies, pursuant to its agreements with them, that Fox was delinquent in its payments to EPSI and that any pharmacy filling prescriptions under Fox's PDPs would do so at its own financial risk. (Countercl., ¶ 45). Envision alleges that after Fox failed to pay the money due, EPSI notified its network of pharmacies of Fox's delinquency in paying prescription claims. (Countercl., ¶ 46).

Envision alleges that on December 26, 2008, defendant James Mindala ("Mindala") advised Gupta that if EPSI did not receive the money owed it by Fox later that day, EPSI would

6

cease processing claims subject to reactivation once payment was made. (Countercl., ¶ 49). When Fox failed to make the payment, EPSI discontinued processing Fox's claims. (Countercl., ¶ 50). According to Envision, Fox has never paid EPSI for the prescription drug claims processed by EPSI for Fox between December 1 and December 14, 2008, totaling one million four hundred ninety-nine thousand nine hundred twenty-six dollars ($1,499,926.00), and between December 15 and December 27, 2008, totaling one million one hundred twenty-six thousand nine hundred ninety-five dollars ($1,126,995.00). (Countercl., ¶¶ 53-54). In addition, Envision alleges that Fox owes EPSI four thousand one hundred fourteen dollars ($4,114.00) for "miscellaneous services" that EPSI performed on behalf of Fox during November and December 2008. (Countercl., ¶ 54).

Envision further alleges that during December 2008, Fox, and specifically counterclaim defendant Jaydip Dattaray ("Dattaray"), the Chief Operating Officer of Fox, (Countercl., ¶ 6), falsely represented to EPSI's network of pharmacies that it had paid EPSI for the prescription claims. (Countercl., ¶¶ 55-56, 70, 87). According to Envision, the counterclaim defendants have jeopardized EPHI's business relationships with "an expansive network of pharmacies throughout the United States" by, *inter alia*, failing to pay EPSI on drug prescriptions filled by those pharmacies and processed by EPSI on behalf of Fox during December 2008, and by defaming Envision. (Countercl., ¶ 93-94).[3]

---

[3] Since the parties' Letter of Intent is not relevant to the instant motion, the parties' allegations in their pleadings regarding the Letter of Intent will not be set forth herein. In any event, the parties' allegations are fully set forth in the March 17, 2009 order denying plaintiff's motion for a preliminary injunction.

B.   Procedural Background

On or about December 30, 2008, plaintiffs filed a complaint against Envision and the individual defendants in the Supreme Court of the State of New York, County of Nassau alleging claims, *inter alia*, for fraudulent inducement relating to the Pharmacy Services Agreement and a separate Letter of Intent, and for breach of contract of the Letter of Intent. On January 21, 2009, defendants removed the action to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). On January 26, 2009, Envision, *inter alia*, asserted counterclaims against plaintiffs and the counterclaim defendants alleging, *inter alia*, that plaintiffs and the counterclaim defendants fraudulently induced it to (a) enter into the Pharmacy Services Agreement, (b) continue to process prescription drug claims on behalf of Fox, and (c) continue to negotiate a possible sale of EPHI. In addition, Envision asserts counterclaims for breach of the Pharmacy Services Agreement, unjust enrichment, defamation and tortious interference with contract and business relations.

Envision now moves for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure compelling Fox (1) to pay to Envision the full amount owed to the network pharmacies for prescription drugs dispensed to Fox's insureds in the month of December 2008; or, in the alternative (2) to pay the network pharmacies directly and certify to the Court in writing that payment is complete.

II.  DISCUSSION

A.   Standard for Injunctive Relief

In order to obtain a preliminary injunction, the moving party must demonstrate "that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); see also Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005) (holding that in order to obtain preliminary injunctive relief, a plaintiff must establish (1) a likelihood of irreparable injury in the absence of injunctive relief; (2) either a likelihood of success on the merits, or "sufficiently serious questions going to the merits to make them a fair ground for litigation" and a balance of hardships tipping decidedly in the plaintiff's favor). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 129 S.Ct. at 376.

1. Irreparable Harm

Envision contends that Fox's refusal to pay the claims owed to the network pharmacies that have provided prescription drugs to Fox's Medicare participants "threatens Envision's reputation, its pharmacy network, its ability to service other Medicare and commercial customers, and its entire business operations." (Envision's Memorandum of Law dated February 4, 2009 [Env. Mem.], pp. 2-3). Specifically, Envision contends that "there is a *serious concern* that Fox is withholding these federal funds due the pharmacies for the purpose of propping up its otherwise failing business * * * [which] would leave Envision with no redress after trial if this Court does not enter an order securing payment to the pharmacies." (Env. Mem., p. 2) (emphasis added). In addition, Envision alleges that notwithstanding Section 7.3 of the Pharmacy Services Agreement, "unless Fox pays Envision's network pharmacies for prescriptions dispensed to

9

Fox's participants, Envision faces the substantial likelihood that it will be forced to pay these claims itself. * * * [Moreover,] *If* a major retail chain in Envision's network * * * is not paid for prescriptions it has dispensed, that major retail chain *may* cease doing business with Envision which would prove disastrous to Envision's business and cause irreparable harm to Envision. * * * *If* a major chain ceased its relationship with Envision, Envision would likely fail to meet the Medicare access requirements, making it impossible for Envision to continue to serve its Medicare clients. * * *." (emphasis added) (Env. Mem., pp. 3-4; see also pp. 6-7; Second Declaration of Kevin M. Nagle [Nagle Decl. II], ¶ 9).

Plaintiffs contend that Envision has an adequate remedy at law, i.e., monetary damages on its breach of the Pharmacy Services Agreement claim, and, thus, cannot show irreparable harm.

A party seeking a preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 129 S.Ct. at 375 (emphasis in original). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." Id. at 375-376. In order to establish irreparable harm, the injury alleged by the movant must be "actual and imminent," not merely "remote or speculative," and cannot be compensated by a monetary award alone. Grand River Enterprise Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (citing Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005)); Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 37 (2d Cir. 1995). Since "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, * * *, the moving

party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Grand River, 481 F.3d at 66-67.

Proof that the party seeking injunctive relief will sustain a monetary loss absent an injunction is generally insufficient to establish irreparable harm. Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77, 86-87 (2d Cir. 1996). Rather, the movant must demonstrate "damage that cannot be rectified by financial compensation." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989); see also Jamaica Ash & Rubbish Removal Co., Inc. v. Ferguson, 85 F.Supp.2d 174, 180 (E.D.N.Y. 2000) (holding that if a monetary award will provide adequate compensation for the alleged injury, a preliminary injunction should not issue).

Although injunctive relief "is not the conventional remedy for breach of contract, * * * there is certainly no ironclad rule against its use," if the appropriate standard for such relief is met. Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004). A party's "loss of reputation, good will, and business opportunities" resulting from a breach of contract may constitute irreparable harm, see id.; see also Jamaica Ash, 85 F.Supp.2d at 181, where, for example, a party is threatened with loss of a business, a "relatively unique product," or the ability to provide its product or service to the market or its customers. See Tom Doherty, 60 F.3d at 37, 38 (citing cases). However, there is no irreparable harm where the loss of goodwill is doubtful and the loss of a profitable line of business is compensable by monetary damages. Id. at 37-38.

Envision has not demonstrated that the very viability of its business is threatened absent an injunction.[4] Envision's argument is that if a major retailer in its pharmacy network is not paid

---

[4] Indeed, it appears that Envision has intentionally avoided disclosing its profitability. (See Third Declaration of Kevin M. Nagle ["Nagle Decl. III"], ¶ 14). For example, Mr. Nagle disputes plaintiffs' representation of Envision as a "billion dollar company" and states that "Fox

11

for prescriptions it has dispensed to Fox's Medicare participants, that retailer *may* cease doing business with Envision and *if* that occurred, Envision would *likely* fail to meet the Medicare access requirements, making it impossible for Envision to continue to serve its Medicare clients. Such speculative and conclusory allegations are insufficient to establish irreparable harm. See, e.g. Shepard Industries, Inc. v. 135 East 57th Street, LLC, No. 97 Civ. 8447, 1999 WL 728641, at * 7 (S.D.N.Y. 1999) (holding that conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm). Notably, Envision's only allegation regarding contact with network pharmacies concerning the unpaid claims by Fox is that it has received "numerous inquiries" from some of its network pharmacies as to when they would receive payment for Fox claims. (See Nagle Decl. II, ¶ 8). There is no allegation that any of those pharmacies, or any other retailer, threatened to cease doing business with Envision if those claims were not paid, or otherwise expressed any concern or hostility toward Envision regarding the unpaid claims. In the absence of any evidence, beyond mere speculation, that Envisions's business reputation and goodwill will suffer due to Fox's failure to pay the claims due the network pharmacies, it is at best possible, but not probable, that Envision could be unable to "continue to serve its Medicare clients." See, e.g. Helios & Matheson North America, Inc. v. Vegasoft Oy, No. 07 Civ. 3600, 2007 WL 1541204, at * 4 (S.D.N.Y. May 24, 2007)(denying the plaintiff's motion for a preliminary injunction where there was no evidence, except for speculative testimony, that the plaintiff could lose business as a result of the defendants' breach); Jamaica Ash. 85 F.Supp.2d at 182 (finding that the harm claimed by the plaintiff was speculative

---

knows exactly what Envision's sales have been over the last several years * * * [and] Envision's gross sales are nowhere near one billion dollars."  However, Mr. Nagle conspicuously does not share any facts regarding Envision's profitability with the Court.

where the plaintiff's allegations were based on "ifs"); National Football League Players Ass'n v. National Football League Properties, Inc., No. 90 Civ. 4244, 1991 WL 79325, at * 4 (S.D.N.Y. 1991) (finding that the confusion expressed by the plaintiff's licensees regarding the status of the licensing program did not demonstrate clear harm to the plaintiff's reputation and that the plaintiff's conclusory statements of loss of reputation were insufficient). The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." Borey v. National Union Fire Ins. Co. of Pittsburgh, Pa., 934 F.2d 30, 34 (2d Cir. 1991); USA Network v. Jones Intercable, Inc., 704 F.Supp. 488, 491 (S.D.N.Y. 1989) (holding that a preliminary injunction should not issue upon a party's "imaginative, worst case scenario of the consequences flowing from the [opposing party's] alleged wrong * * *.").

Moreover, although Envision alleges that it may have to pay the unpaid Fox claims itself, though not obligated to do so under Section 7.3 of the Pharmacy Services Agreement, Envision does not allege that the viability of its business would be threatened thereby. See, e.g. Helios, 2007 WL 1541204, at * 3 (finding that since the plaintiff's lost revenue resulting from the defendant's breach of contract was just a tiny fraction of the plaintiff's total revenue, the plaintiff could not establish irreparable harm). Any harm caused to Envision as a result of its paying the claims owed by Fox to the network pharmacies can be sufficiently remedied by monetary damages. Moreover, the amount of monetary damages resulting therefrom is clear from the terms of the contract, as evidenced by Envision's pleadings and motion papers submitted both on this motion and in opposition to plaintiffs' prior motion for injunctive relief.

Although monetary loss may constitute irreparable harm if necessary "to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to

frustrate any judgment on the merits by making it uncollectible," Pashaian, 88 F.3d at 87 (quoting Gelfand v. Stone, 727 F.Supp. 98, 100 (S.D.N.Y. 1989)), or where the insolvency of the obligating party is imminent, see Mitsubishi Power Systems, Inc. v. Shaw Group, Inc., No. 04 Civ. 1251, 2004 WL 527047, at * 2 (S.D.N.Y. Mar. 16, 2004) (citing cases), Envision has not established that plaintiffs have completed any actions with the specific intent to frustrate any judgment in favor of Envision on its counterclaims, or are otherwise in danger of imminent insolvency. See, e.g. Pashaian, 88 F.3d at 87 (finding irreparable harm where the defendants admitted to completed actions taken by them to frustrate any judgment in favor of the plaintiff). Envision's allegations that plaintiffs filed admittedly inaccurate financial statements with the National Association of Insurance Commissioners, which allegedly "grossly understate Fox's financial solvency," (Nagle Decl. III, ¶ 1), are insufficient to show that Fox is insolvent or that "there is a substantial chance" that Fox will be insolvent upon final resolution of this action. See, e.g. Mitsubishi, 2004 WL 527047, at * 4.

Moreover, "[a] district court should generally consider delay in assessing irreparable harm." Tom Doherty, 60 F.3d at 39. "The need for preliminary injunctive relief is predicated on the assumption that a party needs immediate relief in order to protect its rights. * * * '[D]elay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.'" National Football League, 1991 WL 79325, at * 3 (citing Citibank N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985)). Although Envision's delay of almost two (2) months in seeking injunctive relief is not itself substantial, the fact that Envision only sought such relief in response to plaintiffs' motion for injunctive relief renders Envision's claims of

irreparable injury suspect.[5]

Since Envision's allegation of irreparable harm are speculative and conclusory, and Envision has an adequate remedy at law, its motion for a preliminary injunction is denied.

III. CONCLUSION

For the foregoing reasons, Envision's motion for a preliminary injunction is denied.

SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: March 23, 2009
       Central Islip, New York

Copies to:

Farrell Fritz, P.C.
1320 RexCorp Plaza
Uniondale, N.Y. 11556
Attn:  Franklin C. McRoberts, IV, Esq.
       John P. McEntee, Esq.
       Steven N. Davi, Esq.

Law Office of Steven Cohn, P.C.
One Old Country Road, Suite 420
Carle Place, N.Y. 11514

---

[5] Envision's excuse for the delay, i.e., that it only became clear from the plaintiffs' motion papers that Fox was reneging on its promise to pay the network pharmacies, (Env. Mem., p.1 n.1), is disingenuous since Envision asserted counterclaims based on plaintiffs' failure to pay those claims.

15

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, N.Y. 10111
Attn: Oren J. Warshavsky, Esq.