UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------- X

FOX INSURANCE COMPANY and REENA NANDI,

Plaintiffs,

-against-

ENVISION PHARMACEUTICAL HOLDINGS, INC., ENVISION PHARMACEUTICAL SERVICES, INC., JAMES MINDALA, KEVIN NAGLE, and BARRY KATZ,

Defendants,

-against-

JAYDIP DATTARY, RAJESH GUPTA, DIPAK NANDI, and KARY SHANKAR,

Counterclaim Defendants.

--------------------------------- X

Civil Action No. 09-CV-0237

(Feuerstein, J.)
(Lindsay, M.J.)

**AMENDED COMPLAINT OF PLAINTIFFS**
**FOX INSURANCE AND REENA NANDI**

Plaintiffs Fox Insurance Company ("Fox") and Reena Nandi ("Nandi;" together with Fox, "Plaintiffs"), by and through their attorneys, Law Office of Steven Cohn, P.C., and Farrell Fritz, P.C., as and for their Amended Complaint against defendants Envision Pharmaceutical Holdings, Inc., ("EPH"), Envision Pharmaceutical Services, Inc., ("EPS;" together with EPH, "Envision"), James Mindala ("Mindala"), Kevin Nagle ("Nagle"), and Barry Katz ("Katz;" together with Envision, Mindala, and Nagle, "Defendants"), allege as follows:

**Nature of the Action**

Since in or around September, 2005, Fox has sponsored a Medicare prescription drug plan, providing prescription drug benefits coverage to eligible Medicare beneficiaries. EPS, in turn, is in the business of providing pharmacy benefits management services to Medicare prescription drug plan sponsors such as Fox.

In or around mid-2007, the parties began to negotiate the terms of an agreement under which EPS would provide pharmacy benefits management services for and on behalf of Fox. During these negotiations, Defendants, including Mindala, Nagle, and Katz, made a number of representations regarding the transparency of EPS's business practices. Specifically, they represented that EPS would credit, or "pass through" to Fox one hundred percent of all price discounts and concessions that EPS receives from its network pharmacy companies. These representations were critical to Plaintiffs' consideration of EPS as its provider of pharmacy benefits management services. Thus, on or about December 5, 2007, Fox and EPS entered into a pharmacy services agreement, which embodied Defendants' commitment to pass through pricing.

In or around the same time, the parties began to negotiate regarding the possible acquisition by Fox of all of the outstanding capital stock of Envision. Negotiations continued into February, 2008, during which time Defendants, including Mindala, Nagle, and Katz, made a number of representations regarding Envision's projected revenue and earnings for 2008. These representations were critical to Plaintiffs' decision to acquire Envision's outstanding capital stock since the purchase price for the acquisition would be heavily dependent on Envision's projected revenue and earnings for 2008. In reliance on Defendants' representations in this regard, Fox executed a letter of intent and subsequent letter agreements to purchase all of the outstanding capital stock of Envision.

During the course of Defendants' subsequent customary due diligence, Fox discovered that during the negotiation of the stock acquisition, Defendants had inflated and, thus, had misrepresented Envision's true projected revenue and earnings for 2008.

In or around the same time, Fox also discovered that during the negotiation of the pharmacy services agreement, Defendants had misrepresented EPS's commitment to full transparency, full disclosure, and pass through pricing. In fact, EPS has failed to credit, or pass

through to Fox one hundred percent of all price discounts and concessions that EPS has received from its network pharmacies as required under the pharmacy services agreement.

Moreover, since in or around December, 2008, EPS has refused, despite demand, to provide Fox with the data files and related documents that Fox needs under the pharmacy services agreement to provide prescription drug benefits coverage to the eligible beneficiaries of the Medicare prescription drug plan that Fox sponsors.

Finally, since in or around December, 2008, Defendants have been engaged in a malicious campaign to disparage and undermine Fox in the pharmaceutical community. As a result, a number of pharmacies have delayed or denied dispensing prescription drugs to eligible Plan beneficiaries, thus jeopardizing Plan beneficiaries who rely on Fox and who have no other means to acquire their prescription medication.

As a result, Plaintiffs have commenced this action against Defendants seeking injunctive relief, and money damages.

## Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

2. The matter in controversy exceeds $75,000, exclusive of interest and costs and there is diversity of citizenship between the parties.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a) and 1441(a).

## Parties

4. Plaintiff Fox Insurance Company ("Fox") is an Arizona corporation with a principal place of business located in New York, New York.

5. Plaintiff Reena Nandi ("Nandi") is a resident of the State of New York, County of Nassau.

6. Defendant Envision Pharmaceutical Holdings, Inc. ("EPH"), is a Delaware corporation with a principal place of business located in Twinsburg, Ohio.

7. Defendant Envision Pharmaceutical Services, Inc. ("EPS"), is an Ohio corporation with a principal place of business located in Twinsburg, Ohio.

8. Defendant James Mindala ("Mindala") is, upon information and belief, a resident of the State of Ohio.

9. Defendant Kevin Nagle ("Nagle") is, upon information and belief, a resident of the State of California.

10. Defendant Barry Katz ("Katz") is, upon information and belief, a resident of the State of Florida.

## Facts Concerning All Claims For Relief

### *Background*

11. Fox is a Prescription Drug Plan sponsor ("PDP Sponsor").

12. In this capacity, Fox operates one or more Voluntary Medicare Prescription Drug Plans ("PDPs") under the auspices of the Centers for Medicare & Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services.

13. By the terms of its September, 2005 agreement with CMS (the "CMS Agreement"), Fox is required, among other things, to provide basic prescription drug coverage to Medicare beneficiaries and to calculate and collect premiums from them.

14. Accordingly, since in or around September, 2005, Fox has sponsored a Medicare Part "D" PDP, providing prescription drug coverage for eligible Medicare beneficiaries.

15. Eligible beneficiaries must be at least 65 years of age, disabled, or otherwise sufficiently debilitated to pre-qualify to receive prescription drug coverage under the Medicare Part "D" PDP.

16. A large number of the eligible beneficiaries participating in the Medicare Part "D" PDP are afflicted by severe mental illness and/or reside in a nursing home.

17. Moreover, the overwhelming majority of these Medicare Part "D" PDP beneficiaries are financially destitute or severely impoverished with few, if any, sources of income.

18. Thus, any interruption of prescription drug coverage through the Medicare Part "D" PDP would have potentially fatal consequences for many, if not all, of these beneficiaries, for they would not be able to get their medication.

19. EPS provides pharmacy benefits management services to PDP Sponsors such as Fox that would not otherwise have access to a network of pharmacies and, thus, would not qualify to sponsor a Medicare Part "D" PDP.

***The Pharmacy Services Agreement***

20. In or around mid-2007, Fox and EPS began to negotiate the terms of an agreement under which EPS would provide pharmacy benefits management services for and on behalf of Fox.

21. During these negotiations, Defendants, including Mindala, Nagle, and Katz, made a number of material representations regarding the transparency of EPS's business practices.

22. Specifically, Mindala, Nagle, and Katz represented that EPS would credit, or "pass through" to Fox one hundred percent of all price discounts and concessions, including all rebates, rebate administrative fees, pharmacy discounts, and other incentives, which EPS receives from its network pharmacy companies. These representations were critical to Plaintiffs' consideration of EPS as its provider of pharmacy benefits management services.

23. Defendants referred to its promise to pass through to Fox all price discounts and concessions received from the network pharmacies as "pass through pricing."

24. These price discounts and concessions, also in the form of rebates, rebate administrative fees, pharmacy discounts and other incentives, would then be passed onto CMS by Fox pursuant to the CMS Agreement.

25. Thus, on or about December 5, 2007, in reliance on Defendants' representations in this regard, Fox and EPS entered into a Pharmacy Services Agreement (the "PSA"), which embodied Defendants' commitment to pass through pricing. A copy of the PSA is attached hereto as Exhibit "1."

26. Under the PSA, EPS also agreed to perform pharmacy benefits management services for and on behalf of Fox, including, but not limited to, processing prescription drug claims; verifying participants' point-of-sale eligibility; negotiating and executing contracts with pharmaceutical manufacturers, wholesalers and other third parties to obtain favorable pricing; and managing and administering other PDPs to benefit Fox.

***Fox Acquisition of Envision Outstanding Capital Stock***

27. In or around the same time, in November, 2007, the parties began to negotiate regarding the possible acquisition by Fox of all of the outstanding capital stock of Envision (the "Acquisition").

28. Specifically, on or about November 26, 2007, Plaintiffs met with Defendants, including Mindala, Nagle, and Katz, to discuss and negotiate the terms and conditions of the Acquisition.

29. At that time, Defendants provided Plaintiffs with a 2008 "pro forma" combined income statement for EPH (the "2008 CIS").

30. The 2008 CIS stated, among other things, that EPH would realize earnings before interest, taxes, depreciation, and amortization of $11,400,678.00 in 2008 ("2008 EBITDA").

31. After the November 26, 2007 meeting, and before the parties' next meeting on January 31, 2008, Defendants provided Plaintiffs with a revised pro-forma combined income

statement for EPH for the period 2008 through 2010 (the "Revised 2008 CIS").

32. The Revised 2008 CIS stated that EPH would realize EBITDA of $15,558,151.00 in 2008 ("Revised 2008 EBITDA"), which represented a material increase from the initial 2008 CIS and initial 2008 EBITDA.

33. On or about January 31, 2008, the parties met again to discuss further the terms and conditions of the Acquisition.

34. Among the matters discussed at the January 31, 2008 meeting was the material increase revenue projections contained in the Revised 2008 CIS. This was a critical component to the negotiation since the purchase price of the Acquisition would depend on projected revenue and earnings.

35. During the course of the January 31, 2008 meeting, Defendants expressly represented to Plaintiffs that the Revised 2008 EBITDA was based on actual signed contracts for assured business, as opposed to speculative projections of potential future business.

36. These representations were critical to Plaintiffs' decision to acquire Envision's outstanding capital stock since the purchase price for the acquisition would be heavily dependent on Envision's projected revenue and earnings for 2008.

37. Thus, in reliance on Defendants' representations in this regard, Fox executed a Letter of Intent ("LOI") to purchase all of the outstanding capital stock of Envision. Fox also designated Nandi as the acquiror of the stock.

38. Subsequent letter agreements ("Related Agreements") established an exclusivity period for Plaintiffs with respect to any "third party proposal" to acquire Envision's capital stock and modified certain terms and conditions in the LOI.

***Fox's Due Diligence Reveals Problems with the Acquisition***

39. After executing the LOI and Related Agreements, Plaintiffs retained the services of a professional services firm to conduct the customary due diligence as part of the Acquisition.

In this regard, Fox incurred fees of more than $1,500,000.00.

40. During the course of Plaintiffs' customary due diligence, Plaintiffs discovered that Defendants had inflated and, thus, had misrepresented Envision's projected revenue and earnings for 2008.

41. Specifically, Plaintiffs' due diligence revealed that, contrary to Defendants' representations, the Revised 2008 EBITDA was based not solely on signed contracts for assured business, but rather on speculative projections for potential future business.

42. Upon information and belief, Defendants' representations regarding the Revised 2008 CIS and the Revised 2008 EBITDA, in particular that they reflected actual signed contracts for assured business as opposed to speculative projections of potential future business, were false and were made to induce Plaintiffs to continue negotiations regarding the Acquisition and ultimately to consummate the Acquisition.

43. Had Plaintiffs known at the time that Defendants had misrepresented the nature and import of the Revised 2008 CIS and Revised 2008 EBITDA, Plaintiffs would not have continued to negotiate, would not have conducted its extensive and costly due diligence, and would not have executed the LOI and Related Agreements.

***EPS Fails to Pass Through***

44. In or around the same time, Plaintiffs also discovered that during the negotiation of the PSA, Defendants had misrepresented EPS's commitment to full transparency, full disclosure, and pass through pricing. In fact, EPS has failed to credit, or pass through to Fox one hundred percent of all price discounts and concessions that EPS has received from its network pharmacies as required under the PSA.

45. Upon information and belief, Defendants' representations regarding "full transparency," "full disclosure" and "pass through pricing" during the negotiations of the terms of the PSA were false and were made to induce Plaintiffs to continue negotiations regarding the

PSA and ultimately to enter into the PSA.

46. Had Plaintiffs known at the time that Defendants had misrepresented its true intentions regarding "full transparency," "full disclosure" and "pass through pricing," Plaintiffs would not have engaged in continued negotiations and would not have entered into the PSA.

***EPS Withholds Critical Data Files***

47. Since in or around December, 2008, EPS has also refused, despite demand, to provide Fox with the critical data files that Fox needs under the PSA to provide basic prescription drug coverage to eligible beneficiaries of the Medicare Part "D" PDP.

48. Prior to December, 2008, EPS provided Fox with access to these data files in text format on a file transfer protocol (FTP) server pursuant to the PSA.

49. The cost, if any, to EPS to provide the data files to Fox was minimal.

50. There are several categories of data files contained on the FTP server maintained by EPS, including, but not limited to, Medication Therapy Management and Medication Therapy Management Aggregate Files, Prior Authorization Files, Prescription Drug Event Files, Claims Files, True Out-Of-Pocket Cost Accumulator Files, Explanation of Benefits Files.

51. Since in or around December, 2008, EPS has refused to provide Fox with these data files, despite demand. In fact, Fox's password to access the server and site has been terminated.

52. As a result, Plaintiffs ability to service eligible Plan beneficiaries has been compromised and, thus, the well-being of all eligible PDP beneficiaries is at risk.

53. Plaintiffs and the Plan beneficiaries who rely on Fox will continue to suffer irreparable harm as long as EPS's conduct is allowed to continue.

***Disparagement Campaign***

54. Since in or around December, 2008, Defendants also have been engaged in a malicious campaign to disparage Plaintiffs and undermine Fox in the pharmaceutical industry.

55. Specifically, Defendants have misled influential pharmacy associations by revealing, without explanation, that Fox has not paid Envision, while failing to mention the parties' underlying good-faith dispute herein.

56. In turn, these pharmacy associations have passed this misinformation along to their member pharmacies, causing several pharmacies not to process Fox's beneficiary claim forms on the misconception that Fox is insolvent.

57. In this regard, Defendants have circulated a "Pharmacy Bulletin" to pharmacies, pharmacy associations, and others cautioning recipients that they are dispensing prescriptions "at [their] financial risk."

58. Defendants' Pharmacy Bulletin is intended to mislead recipients that Fox cannot pay for prescription medication dispensed to Plan beneficiaries.

59. The ensuing confusion has caused several pharmacies to refuse to dispense prescription drugs to Plan beneficiaries and has caused Plan beneficiaries that have been denied their prescription medication to complain to CMS.

60. Plaintiffs and the Plan beneficiaries who rely on Fox will continue to suffer irreparable harm for as long as Defendants' disparagement campaign is permitted to continue.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract: Pharmacy Services Agreement)

61. Plaintiffs repeat and reallege paragraphs "1" through "60" as though fully set forth herein.

62. On or about December 5, 2007, Fox and EPS entered into the PSA.

63. Fox properly performed its obligations under the PSA.

64. As set forth above, EPS breached the PSA by, among other acts and omissions, failing to credit, or "pass through" to Fox one hundred percent of all price discounts and concessions, including all rebates, rebate administrative fees, pharmacy discounts, and other

incentives, which EPS receives from its network pharmacy companies.

65. As a result, Plaintiffs have been damaged in an amount to be determined at trial, but not less than $2,000,000.00.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Breach of Contract: Pharmacy Services Agreement)

66. Plaintiffs repeat and reallege paragraphs "1" through "65" as though fully set forth herein.

67. On or about December 5, 2007, Fox and EPS entered into the PSA.

68. Fox properly performed its obligations under the PSA.

69. As set forth above, EPS breached the PSA by, among other acts and omissions, refusing, despite demand, to provide Fox with the data files and related documents and information that Fox needs under the PSA to provide prescription drug benefits coverage to the eligible beneficiaries of the Medicare prescription drug plan that Fox sponsors.

70. EPS's actions in refusing, despite demand, to provide Fox with the data files and related documents and information that Fox needs to provide prescription drug benefits coverage to eligible Plan beneficiaries have caused irreparable harm to Plaintiffs as well as to the Plan beneficiaries that rely on Fox.

71. Accordingly, Plaintiffs are entitled to an injunction directing EPS to fulfill its obligations under the PSA, including, but not limited to, providing access, or otherwise producing, to Plaintiffs the above data files and related documents and information.

72. Plaintiffs have no adequate remedy at law.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Breach of Contract: Letter of Intent and Related Agreements)

73. Plaintiffs repeat and reallege paragraphs "1" through "72" as though fully set forth herein.

74. Fox and Envision executed the LOI and Related Agreements regarding the Acquisition.

75. In the LOI and Related Agreements, Defendants agreed, among other things, to cooperate with Plaintiffs in good faith in structuring the Acquisition; to provide Plaintiffs reasonable access to EPH's books and records and a fair opportunity to discuss the business, operations, and prospects of EPH with Envision's officers, employees, counsel, accountants, and other representatives; and to provide Plaintiffs reasonable access to, and the opportunity to investigate, EPH's assets, properties, facilities, tax returns, and other business, financial and corporate records, reports and documents.

76. Plaintiffs properly performed their obligations, if any, under the LOI and Related Agreements.

77. As set forth above, Defendants breached the LOI and Related Agreements by, among other acts and omissions, failing to provide Plaintiffs with accurate revenue and earnings reports for Envision for 2008.

78. As a result, Plaintiffs have been damaged in an amount to be determined at trial, but not less than $1,500,000.00.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Fraud in the Inducement: Pharmacy Services Agreement)

79. Plaintiffs repeat and reallege paragraphs "1" through "78" as though fully set forth herein.

80. As set forth above, in or around late 2007, during the negotiation of the PSA, Defendants misrepresented EPS's commitment to full transparency, full disclosure, and pass through pricing.

81. In particular, Defendants, including, Mindala, Nagle, and Katz, falsely represented, among other misrepresentations, that EPS would credit, or "pass through" to Fox

one hundred percent of all price discounts and concessions, including all rebates, rebate administrative fees, pharmacy discounts, and other incentives, which EPS receives from its network pharmacy companies.

82. Moreover, upon information and belief, at the time that the above false representations were made, and unbeknownst to Plaintiffs, EPS actually intended, as part of its so-called "rebate aggregator" and "top up rebate" retention policies, to retain for its own profit approximately twenty to thirty percent of all price discounts and concessions it received from the network pharmacies with which EPS transacts business.

83. In fact, EPS has failed to credit, or pass through to Fox one hundred percent of all price discounts and concessions that EPS has received from its network pharmacies.

84. Upon information and belief, Defendants' above representations regarding "full transparency," "full disclosure" and "pass through pricing" during the negotiations of the terms of the PSA were known by Defendants to be false when made, and/or were made recklessly and without regard to the actual facts, and were made to deceive and to induce Plaintiffs to continue negotiations regarding the PSA and ultimately to enter into the PSA.

85. Defendants knew or should have known that Fox would rely on the accuracy and truthfulness of the above representations.

86. Plaintiffs reasonably relied on Defendants' false representations when deciding to continue negotiations regarding the PSA and to enter into the PSA with EPS.

87. When Fox entered into the PSA, Fox did not know and could not have discovered with reasonable diligence the falsity of EPS's misrepresentations concerning "full transparency," "full disclosure" and "pass through pricing."

88. Had Fox known that EPS's representations in this regard were false, it would not have continued negotiations regarding the PSA and would not have entered into the PSA.

89. As a result, Plaintiffs have been damaged in an amount to be determined at trial, but not less than $2,000,000.00.

**AS AND FOR A FIFTH CAUSE OF ACTION**
(Fraud in the Inducement: LOI and Related Agreements)

90. Plaintiffs repeat and reallege paragraphs "1" through "89" as though fully set forth herein.

91. As set forth above, in or around early 2008, during the negotiation of the LOI and Related Agreements, Defendants made false representations regarding the Revised 2008 CIS and the Revised 2008 EBITDA, in particular that these documents reflected actual signed contracts for assured business, as opposed to speculative projections of potential future business.

92. Upon information belief, these representations during the negotiations of the Acquisition were known by Defendants to be false when made, and/or were made recklessly and without regard to the actual facts, and were made to deceive and to induce Plaintiffs to continue to negotiate regarding the Acquisition and to execute the LOI and Related Agreements.

93. Defendants knew or should have known that Fox would rely on the accuracy and truthfulness of the above representations.

94. Plaintiffs reasonably relied on Defendants' false representations in deciding to continue to negotiate over the Acquisition and to enter into the LOI and Related Agreements.

95. When Fox entered into the LOI and Related Agreements, Fox did not know and could not have discovered with reasonable diligence the falsity of Defendants' misrepresentations concerning the Revised 2008 CIS and the Revised 2008 EBITDA.

96. Had Fox known that Defendants' representations in this regard were false, it would not have continued to negotiate regarding the Acquisition and would not have entered into the LOI or the Related Agreements.

97. As a result, Plaintiffs have been damaged in an amount to be determined at trial, but not less than $1,500,000.00.

**AS AND FOR A SIXTH CAUSE OF ACTION**
(Defamation)

98. Plaintiffs repeat and reallege paragraphs "1" through "97" as though fully set forth herein.

99. As set forth above, Envision, with the assent of all Defendants, have published false and defamatory statements about Fox to pharmacies, pharmacy associations, and others.

100. Such false and defamatory statements were published with knowledge of their falsity or in reckless disregard for their truth.

101. Such false and defamatory statements constitute defamation *per se* and have caused Fox substantial damage.

102. Such false and defamatory statements were published without privilege.

103. As a result of the foregoing, Plaintiffs are entitled to an injunction against Defendants enjoining any further disparaging comments.

104. Plaintiffs have no adequate remedy at law.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
(Tortious Interference with Contract and Business Relations)

105. Plaintiffs repeat and reallege paragraphs "1" through "104" as though fully set forth herein.

106. By the terms of the CMS Agreement, Fox is required, among other things, to provide basic prescription drug coverage to Medicare beneficiaries and to calculate and collect premiums from them.

107. In or around mid-2007, the parties began to negotiate the terms of an agreement by which EPS would provide pharmacy benefits management services for and on behalf of Fox.

108. During these negotiations, Defendants, including Mindala, Nagle, and Katz, represented that EPS would credit, or "pass through" to Fox one hundred percent of all price discounts and concessions, including all rebates, rebate administrative fees, pharmacy discounts, and other incentives, which EPS receives from its network pharmacy companies.

109. These price discounts and concessions, also in the form of rebates, rebate administrative fees, pharmacy discounts and other incentives, would then be passed onto CMS by Fox pursuant to the CMS Agreement.

110. Defendants are aware of Plaintiffs' CMS Agreement and of Plaintiffs' obligations to CMS thereunder.

111. Defendants have jeopardized Fox's relationship with CMS and, thus, Fox's ability to continue to operate as a PDP Sponsor under the auspices of CMS by, among other acts and omissions, failing to provide the "full transparency," "full disclosure" and "pass through pricing" that it agreed to provide during the negotiations of the terms of the PSA and as required under the PSA.

112. Defendants lacked justification in jeopardizing Fox's business relationships with CMS and others and Fox's status as a PDP Sponsor.

113. As a result, Plaintiffs have been damaged in an amount to be determined at trial.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
(Quantum Meruit)

114. Plaintiffs repeat and reallege paragraphs "1" through "113" as though fully set forth herein.

115. As set forth above, in or around late 2007, during the negotiation of the PSA, Defendants misrepresented Envision's commitment to full transparency, full disclosure, and pass through pricing. In particular, Defendants, including, Mindala, Nagle, and Katz, falsely represented, among other misrepresentations, that EPS would credit, or "pass through" to Fox

one hundred percent of all price discounts and concessions, including all rebates, rebate administrative fees, pharmacy discounts, and other incentives, which EPS receives from its network pharmacy companies.

116. In fact, EPS has failed to credit, or pass through to Fox under the PSA one hundred percent of all price discounts and concessions that EPS has received from its network pharmacies, but rather, as part of its so-called "rebate aggregator" and "top up rebate" retention policies, has retained for its own profit approximately twenty to thirty percent of all price discounts and concessions it received from the network pharmacies with which EPS transacts business.

117. Fox rendered services to, and otherwise engaged in business with, EPS in good faith and in reliance on the above promises and agreements.

118. EPS assented to, accepted, and received the benefits of Fox's services.

119. Fox's services were performed with the reasonable expectation of compensation pursuant to the above promises and agreements.

120. By reason of the above, in the event a valid agreement between the parties on the grounds set forth herein is found not to exist, Plaintiffs are entitled in *quantum meruit* to a money judgment against Defendants in an amount to be determined at trial.

**AS AND FOR A NINTH CAUSE OF ACTION**
(Unjust Enrichment)

121. Plaintiffs repeat and reallege paragraphs "1" through "120" as though fully set forth herein.

122. By virtue of Defendants' egregious conduct as described herein, including, but not limited to, inducing Fox to continue to engage in negotiations regarding the PSA, inducing Fox to enter into the PSA, inducing Fox to continue to negotiate regarding the Acquisition, and inducing Fox to enter into the LOI and Related Agreements, Defendants have come into

possession of assets of Plaintiffs for which they cannot enjoy the beneficial interest without violating established principles of equity and have benefited at Plaintiffs' expense.

123. In the event a valid agreement between the parties on the grounds set forth herein is found not to exist, equity and good conscience require that Defendants make restitution to Plaintiffs in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A. On the First Cause of Action, an award of damages in an amount to be determined at trial, but not less than $2,000,000.00;

B. On Second Cause of Action, a permanent injunction against Defendants directing EPS to fulfill its obligations under the PSA, including, but not limited to, providing access, or otherwise producing, to Plaintiffs the above data files and related documents and information;

C. On the Third Cause of Action, an award of damages in an amount to be determined at trial, but not less than $1,500,000.00;

D. On the Fourth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $2,000,000.00;

E. On the Fifth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $1,500,000.00;

F. On the Sixth Cause of Action, a permanent injunction against Defendants enjoining any further disparaging comments;

G. On the Seventh Cause of Action, an award of damages in an amount to be determined at trial;

H. On the Eighth Cause of Action, in the event a valid agreement between the parties on the grounds set forth herein is found not to exist, an award of damages in *quantum meruit* in an amount to be determined at trial; and

I. On the Ninth Cause of Action, in the event a valid agreement between the parties on the grounds set forth herein is found not to exist, an award of restitution in an amount to be determined at trial.

**JURY DEMAND**

Plaintiffs Fox Insurance Company and Reena Nandi demand a trial by jury on all issues of their Amended Complaint so triable.

Dated: Carle Place, New York
March 25, 2009

Respectfully Submitted,

LAW OFFICE OF STEVEN COHN, P.C.

By: ______________________________

Steven Cohn
Alan Zigman
*Attorneys for Plaintiffs*
One Old Country Road, Suite 420
Carle Place, New York 11514
(516) 294-6410

FARRELL FRITZ, P.C.
John P. McEntee
Steven N. Davi
*Attorneys for Plaintiffs*
1320 RexCorp Plaza
Uniondale, NY 11556
(516) 227 0700

Interwoven/1035434.4